Aidan W. Butler (SBN 208399)
Attorney at Law
3550 Wilshire Boulevard, Suite 1924
Los Angeles, California 90010
Telephone:  (213) 388-5168
Telecopier: (213) 388-5178
tocontactaidan@gmail.com

Attorneys for Plaintiff YURI BUSIASHVILI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURI BUSIASHVILI, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MIGUEL CARDONA in his official capacity as Secretary of the U.S. Department of Education; U.S. DEPARTMENT OF EDUCATION; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR** <br><br> **1) DECLARATORY RELIEF;** <br><br> **2) VIOLATIONS OF THE FAIR CREDIT REPORTING ACT.** <br><br> **AND** <br><br> **4) VIOLATIONS OF THE CONSUMER CREDIT REPORTING AGENCIES ACT** <br><br> **DEMAND FOR JURY TRIAL** |

## I. JURISDICTION AND VENUE.

1. Jurisdiction of this Court arises under 15 U.S.C. §1681p; declaratory relief is available under 28 U.S.C. section 2201 - 2202.   Venue in this District is proper in that Plaintiff's claim arose in this District.

## II. THE PARTIES.

2. The plaintiff, YURI BUSIASHVILI (hereinafter "Plaintiff"), is a natural person who, at all times relevant herein, was a resident of the State of California,

county of Los Angeles.

3.  Defendant MIGUEL CARDONA is the Secretary (hereinafter, "the Secretary") of the United States Department of Education. The Secretary oversees all operations of the Department and the administration of the federal student loan programs.   The Secretary is sued in his official capacity.

4. Defendant UNITED STATES DEPARTMENT OF EDUCATION (hereinafter, "ED") is an agency of the United States within the meaning of the APA, 5 U.S.C. § 701(b)(1). It is responsible for overseeing and implementing rules for federal student aid programs. Upon information and belief, ED is the holder of Plaintiff's defaulted federal student loan, described more fully below.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to show the true names and capacities  of such defendants when they have been ascertained.  Plaintiff is informed and believes that each of the defendants designated herein as a DOE was in some manner responsible for the occurrences and injuries alleged herein.

6. At all times mentioned herein, each of the defendants was the agent and employee of the other named defendants, and in doing the things alleged were acting within the course and scope of such agency and employment, and in doing the acts herein alleged were acting with the consent, permission and authorization of the remaining defendants.  All actions of each of the defendants were ratified and approved by the other named defendants.

### III. FACTUAL ALLEGATIONS.

7. Plaintiff took out one or more federal student loans in order to assist one of his children in paying undergraduate tuition, and in 2012, consolidated the loans with a Federal Direct Consolidation Loan (hereinafter "the Loan").

COMPLAINT

8. Plaintiff paid dutifully and consistently on the loan.   However, after servicing of the loan was transferred from ED to another entity, Plaintiff noticed idiosyncrasies in how his payments were being allocated, and various inconsistencies in his statements.   Thus began nearly a decade of tireless but futile attempts to obtain clear, consistent information regarding the Loan from a series of different servicing entities.

9. For example, in 2019, Plaintiff attempted to obtain a payment history and a copy of the Loan documents from Sallie Mae, the servicer at the time.   Sallie Mae sent Plaintiff cover letters referring to enclosures which were entirely omitted.   In correspondence dated February 5, 2020, Plaintiff informed Sallie Mae, "I have reviewed your response to my prior correspondence dated December 23, 2019, and your similar correspondence dated December 19, 2019. [¶] In both, you assert, 'a copy of your transaction history with ACS is also enclosed with this letter.' However, in neither instance was the ACS transaction history provided.    [¶]  In addition, the documents you did include were incomplete.  The pagination shows that the complete Application and Promissory Note consists of 10 pages; your copy omitted pages 1 - 2, as well as 8 - 10.   Please provide a complete copy of that Application and Promissory Note."

10.  While Sallie Mae renamed itself Navient, the same negligence and inattention characterized its communication practices.

11.  Navient never provided the first two pages of the purported Note, or any pages from Plaintiff's original application (including, for instance, Truth in Lending Disclosures).   By failing to provide complete documentation, the servicers made it effectively impossible for Plaintiff to conduct a comprehensive review of their computations.

12. While Navient assured Plaintiff by correspondence dated May 6, 2020, "We will respond as soon as our research is complete," but "[t]he inquiry requires additional research and we are working diligently to provide a timely response,"

1   before a response was provided, Navient transferred the Loan back to ED.

2        13. ED also failed to provide the first two pages of the Loan documents.

3   When Plaintiff brought this to ED's attention, in correspondence dated August 19,

4   2020, ED provided the first two pages if an entirely different document – bearing

5   internal page numbers of 1 and 2 of 18, total, then attached pages 3 - 10 of the other

6   document which had already been provided, the actual Loan.   The document from

7   which the first two pages had been taken was dated 2010; the Loan was plainly dated

8   2012.  In short, the author of ED's August 19, 2020, correspondence – attributed to

9   ED's "Default Resolution Group [¶] Servicing Center – had manufactured a hybrid

10  document in order to deflect Plaintiff's point about the missing first two pages.

11       14. ED's August, 2020, letter, also asserted that "No payments were credited"

12  to Plaintiff's Loan while it was with Navient / Sallie Mae, even though Navient had

13  provided Plaintiff with a partial payment history which showed dozens of payments

14  by Plaintiff.

15       15. Within the past three years, ED began reporting Plaintiff as delinquent to

16  various consumer reporting agencies, including but not limited to Trans Union.  ED

17  failed to note in its information to the reporting agencies that Plaintiff had disputed

18  the debt, though he had done so repeatedly and consistently.   ED also falsely

19  reported – for instance, to Trans Union – that although the account was opened in

20  February, 2012, ED had received "$0" in payments from Plaintiff, though in fact

21  Plaintiff had paid tens of thousands of dollars towards the Loan.

22       16. In or around February, 2021, Plaintiff sent a letter to Trans Union

23  disputing the credit reporting by ED.   In response, on March 16, 2021, Trans Union

24  informed Plaintiff that it had reached out to ED in the conduct of an investigation,

25  but that ED had verified the information as accurate.

26       17. ED continues to report inaccurate information to one or more of the

27  consumer reporting agencies, continues to attempt to collect from Plaintiff an

28  amount of money that is not owed, and continues to refuse Plaintiff complete and

accurate information concerning the Loan.

## FIRST CLAIM FOR RELIEF

(For Declaratory Relief Pursuant to 28 U.S.C. §§2201-2202 Act Against ED
and DOES 1 through 5, inclusive)

18. Plaintiff repeats and reincorporates by reference the paragraphs 1 through 17 above.

19. Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that Defendants have violated the Higher Education Act, 20 U.S.C. §§ 1071-1099d, by *inter alia* failing to properly credit payments received from Plaintiff, miscalculating interest on Plaintiff's account, refusing to provide Plaintiff with complete and accurate information and documents concerning the Loan, and seeking to collect from Plaintiff sums of money not owed by Plaintiff.

20. An actual controversy now exists between the parties in that the defendants, and each of them, deny that they have made any computational or accounting errors in their handling of Plaintiff's account, despite evidence to the contrary.

21. Wherefore, a judicial declaration of the parties' respective rights and/or obligations is now appropiate.

## SECOND CLAIM FOR RELIEF

(For Violations of the Fair Credit Reporting Act Against ED
and DOES 1 through 5, inclusive)

22. Plaintiff repeats and reincorporates by reference the paragraphs 1 through 20 above.

23. Plaintiff is a "consumer," as defined by the Fair Credit Reporting Act ("FCRA") section 603, codified at 15 U.S.C. §1681a(c).

24. ED is a "person," as defined by the FCRA section 603, codified at 15

COMPLAINT

U.S.C. §1681a(b); and Experian, TransUnion, and Equifax are consumer reporting agencies, as defined the FCRA section 603, codified at 15 U.S.C. §1681a(f).

25. ED and Does 1 through 5, inclusive, violated the FCRA by reporting inaccurate and misleading information to the consumer reporting agencies, including that Plaintiff had paid "$0" toward the Loan.   The inaccurately reported derogatory information suggested that Plaintiff was not creditworthy, and did not honor his own financial obligations.

26. Plaintiff properly disputed – and requested verification of – the alleged debt by written communication with major consumer reporting agencies.

27. ED failed to conduct a proper investigation of the Plaintiff's dispute, failed to review information available to it, and failed to review all of the information purportedly  provided to it by the credit reporting agencies, in violation of 15 U.S.C. §§1681s-2(b)(A) and 1681s-2(b)(B).

28. Despite knowing – or having reasonable cause to know – that Plaintiff's claims were truthful, and that the alleged debt was invalid, ED verified the debt repeatedly, including to consumer reporting agencies, in violation of 15 U.S.C. §1681s-2(a).

29. Further, ED failed to note that the debt was disputed, despite being aware of that fact, in violation of 15 U.S.C. §1681s-2(a)(3).

30.  Plaintiff has suffered actual damages as a direct result of ED's misconduct, including – but not limited to – mental anguish and suffering, inconvenience, humiliation, frustration, anger, loss of sleep, and anxiety.   Further, Plaintiff has been denied credit opportunities as a direct and proximate result of ED's erroneous derogatory credit reporting.

31. Under 15 U.S.C. §1681o, ED is liable to Plaintiff for attorney's fees, costs, and actual damages.  Further, since ED's violations were willful, ED is liable for statutory damages and punitive damages under 15 U.S.C. §1681n(a).

COMPLAINT

## THIRD CLAIM FOR RELIEF

(For Violations of the Consumer Credit Reporting Agencies Act Against ED and DOES 1 through 5, inclusive)

32. Plaintiff repeats and reincorporates by reference the paragraphs 1 through 31 above.

33. All of the named Defendants violated the Consumer Credit Reporting Agencies Act ("CCRAA") – in particular, Civil Code section 1785.25, inter alia – which states at subparagraph (A), "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

34. All of the Defendants knew or should have known based upon Plaintiff's disputes and/or the information and/or documents provided to them by the reporting agencies – and by their own investigation – that the negative information they were furnishing about Plaintiff was incomplete and/or inaccurate.

35. Plaintiff properly disputed – and requested reinvestigation of – the alleged debt by written communication with major consumer reporting agencies – including Experian.

36. Defendants, and each of them, failed to conduct a proper investigation of Plaintiff's dispute, and failed to review all of the information provided to them both by Plaintiff and by the credit reporting agencies.

37. Despite knowing – or having reasonable cause to know – that Plaintiff's claims were truthful, and that the alleged debt was invalid, the Defendants repeatedly and willfully verified the alleged debt.

38. Further, the Defendants failed to note that the debts they were furnishing information about were disputed, despite being aware of that fact.

39. Plaintiff has suffered actual damages as a direct result of the Defendants' willful misconduct, including – but not limited to – being denied credit solely because of Defendants' erroneous information, and mental distress including anguish

COMPLAINT

and suffering, inconvenience, humiliation, frustration, anger, loss of sleep, hopelessness and despair, harm to his personal relationships, indignity, stress, and anxiety.

40. Under Civil Code section 1783.31, the Defendants are liable to Plaintiff for attorney's fees, costs, punitive damages, and actual damages.

WHEREFORE, Plaintiffs request that judgment be entered in her favor and against the defendants as follows:

1. Punitive and/or exemplary damages, both under common law and 15 U.S.C. section 1681n(a);

2. Actual damages under 15 U.S.C. §1681o;

3. Costs and attorney's fees, under 15 U.S.C. §1681o; and

4. Declaratory relief;

5. For actual damages, punitive damages, attorney's fees and costs pursuant to Civil Code section 1785.31;

6. Statutory damages, actual damages, costs and attorney's fees, pursuant to Civil Code section 1788.30; and

7. For such other and further relief as the Court deems just and proper.

PLEASE TAKE NOTICE that plaintiff YURI BUSIASHVILI requests a trial by jury.


DATED: September 3, 2021                    Respectfully submitted,

                                    By: _____
                                        Aidan W. Butler
                                        Attorney for Plaintiff
                                        YURI BUSIASHVILI